Filed 1/12/22  In re E.L. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.L. et al., Persons Coming Under the Juvenile Court Law. | B311592 (Los Angeles County Super. Ct. No. 19CCJP06214DE) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ROSA L., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah J. Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Appellant Rosa L. (mother) appeals from the juvenile court's March 24, 2021 order denying her Welfare and Institutions Code[1] section 388 petition requesting return of her children E.L. and Z.L. (born 2019)[2] to her custody, or in the alternative, reinstatement of reunification services.[3]

We affirm the juvenile court's order.

## BACKGROUND

In addition to E.L. and Z.L., mother has three older children, Jorge (born 2004), Oscar (born 2007) and Angel (born

---

[1]  All further statutory references are to the Welfare and Institutions Code.

[2]  E.L. and Z.L. are sometimes referred to collectively as the twins.

[3]  While this appeal was pending, mother filed, on July 19, 2021, a second section 388 petition requesting return of the children to her custody, or alternatively, reinstatement of reunification services. On September 22, 2021, the juvenile court granted that petition in part and reinstated mother's reunification services. The juvenile court's September 22, 2021 order is not at issue in this appeal. Mother contends the juvenile court's September 22, 2021 order does not moot this appeal because the children were not returned to her custody and because she was denied reunification services from March 24, 2021, through September 23, 2021.

2

2009),[4] who are not subjects of this appeal.  Mother was also pregnant with her sixth child at the time of the hearing on her section 388 petition.

**Child welfare history**

In 2015, the Los Angeles County Department of Children and Family Services (the Department) filed separate section 300 petitions on behalf of Jorge, Oscar, and Angel.  In February 2015, the juvenile court sustained the petitions based on methamphetamine use by mother, Eric (Angel's father), and Ivan D. (Oscar's father) and ordered the siblings removed from their parents' custody.  Court supervision was terminated in August 2016 after mother, Eric, and Ivan D. completed court-ordered programs.

In September 2019, the Department filed another petition on behalf of the siblings, alleging that mother had tested positive for methamphetamine and had physically abused Jorge by slapping him on the face.  Jorge, Oscar, and Angel were removed from mother and placed with their fathers.

**Detention and section 300 petition**

On October 4, 2019, the juvenile court granted the Department's application to remove E.L. and Z.L. from mother based on allegations that mother had twice tested positive for methamphetamine while she was pregnant with the twins.  Although mother, E.L., and Z.L. had negative toxicology screens at the twins' birth, E.L. and Z.L. were born prematurely and remained in the neonatal intensive care unit.

---

[4]     Jorge, Oscar, and Angel are sometimes referred to collectively as the siblings.

3

In an October 2019 meeting with the social worker, mother confirmed that she had an open dependency case involving the siblings and admitted using methamphetamine while pregnant with E.L. and Z.L. Mother identified a man named "Ivan" as the twins' father but said she did not know how to locate him and that he did not want to have anything to do with the children. The Department's efforts to locate the twins' father were unsuccessful.

On October 8, 2019, the Department filed a petition on behalf of E.L. and Z.L. under section 300, subdivisions (a), (b), and (j) alleging that mother had physically abused Jorge, mother abused methamphetamine and amphetamine, and the siblings were prior dependents based on mother's drug use.

Mother and Eric appeared at the October 9, 2019 detention hearing at which the juvenile court ordered E.L. and Z.L. detained from mother. At Eric's request, the court ordered paternity testing to determine whether Eric was the twins' father. Mother was granted monitored visits with the twins three times a week for a minimum of three hours.

**Jurisdiction and disposition**

E.L. and Z.L. were placed together in the same foster home at the time of the Department's December 4, 2019 jurisdiction/disposition report. Mother told the dependency investigator that she could not identify the twins' father. Mother admitted using methamphetamine two or three times while pregnant with the twins but said she had been sober for four years before her recent relapse.

Eric told the dependency investigator that he did not know mother had relapsed until she tested positive for methamphetamine during an emergency room visit. He said that

mother had been sober for four to five years and had worked hard to reunify with the siblings in a previous dependency case.

Ivan D. denied being the twins' father and said he did not know the father's identity. He said mother admitted to him that she had recently relapsed.

At the December 4, 2019 adjudication hearing, the juvenile court dismissed the allegations concerning physical abuse of Jorge and sustained the allegations under section 300, subdivisions (b) and (j) regarding mother's methamphetamine abuse.[5]

On January 22, 2020, the juvenile court ordered E.L. and Z.L. removed from mother's custody and suitably placed. The court accorded mother family reunification services and ordered her to participate in a full drug treatment program with aftercare, random or on-demand weekly drug testing, a 12-step program with a sponsor, and individual counseling to address case issues. Paternity testing determined that Eric was not twins' biological father, and the juvenile court found that Eric was not the twins' presumed, biological, or alleged father.

**Termination of reunification services**

E.L. and Z.L. remained placed together in the same foster home at the time of the Department's September 23, 2020 interim review report. Both children had ongoing health issues. Z.L. was diagnosed with reactive airway disease, GERD, plagiocephaly, torticollis, and developmental delays. E.L. was also diagnosed with reactive airway disease and developmental delays. The twins attended monthly doctor visits to manage their

---

[5]     The record on appeal does not include a copy of the sustained petition for E.L. and Z.L.

health issues. Their primary physician, Dr. Barron, reported that the twins' foster mother was doing an "excellent job" of managing the children's medical needs. Dr. Barron told the social worker that mother could contact her anytime for updates on the twins' medical condition. The social worker provided mother with Dr. Barron's contact information and a summary of the twins' health issues.

Mother was in partial compliance with her case plan. She had left an outpatient drug treatment program at El Proyecto del Barrio and enrolled in an outpatient program at Prototypes Women's Center, but left Prototypes shortly thereafter because the staff there did not speak Spanish. After leaving Prototypes, mother reenrolled in the outpatient program at El Proyecto del Barrio. Between May 8, 2020, and August 15, 2020, mother tested positive for amphetamine/methamphetamine two times, failed to appear for testing three times, and tested negative 12 times.

On July 9, 2020, mother's case manager at El Proyecto del Barrio reported that mother was being discharged because she was not taking responsibility for her actions and did not appear to be benefitting from the program. The case manager referred mother to a residential treatment program.

Mother told the social worker she did not want to enter an inpatient drug treatment program. The social worker underscored the importance of finding a program that would help mother maintain her sobriety. She subsequently e-mailed and texted mother references for alternate treatment programs.

On July 21, 2020, mother's case manager at El Proyecto del Barrio informed the Department that the program staff had granted mother's request for a "second chance" after her previous

6

discharge. The case manager reported, however, that mother had failed to attend sessions on July 20, 23, 24, and 27 and risked being discharged a second time.

On August 4, 2020, a case manager at Socarro's Residential Facility informed the social worker that mother had enrolled in their inpatient drug treatment program. The case manager contacted the social worker again on August 11, 2020, and said the facility was considering discharging mother because she had lied during her intake appointment. The case manager offered to transfer mother to another inpatient program, but mother had refused.

In July 2020, the twins' caregiver reported that mother had behaved strangely during a recent virtual visit and did not interact with E.L. and Z.L. at all. The caregiver said she suspected that mother was under the influence of drugs at the time.

The caregiver told the social worker that she had informed mother of several upcoming doctor appointments for E.L. and Z.L. and had offered to arrange a three-way call with the social worker, who could serve as an interpreter for mother. Mother told the caregiver that she was not interested and that "she just wants [the caregiver] to take care of it."

At the September 23, 2020 review hearing, the juvenile court found that mother had failed to make substantive progress in her case plan, terminated mother's reunification services, and set a section 366.26 hearing.

**Section 366.26 report**

In January 2021, the Department reported that E.L. and Z.L. remained placed with the P.s, who had been caring for the children since their detention. The twins were attached to P.s,

who continued to fulfill the children's medical and emotional needs. The P.s had an approved home study and wanted to adopt the twins.

E.L. and Z.L. attended numerous medical appointments to address their respective health problems. Both children were also receiving regional center services.

Between October 2019 and March 2020, mother regularly attended twice weekly in-person visits with the twins together with the siblings. Mother refused to hold or carry E.L. and Z.L. during some of these visits and asked the siblings or Eric for assistance in caring for or feeding the twins. The in-person visits were changed to video visits after March 2020 because of COVID-19. Mother regularly attended the video visits. Ms. P. reported, however, that E.L. and Z.L. seemed afraid of mother because she frequently yelled at the siblings during the video visits. Mother had two in-person visits with Z.L. and E.L. in December 2020. Mother was appropriate during those visits, although E.L. and Z.L. did not demonstrate any attachment to mother.

The Department recommended that the juvenile court terminate parental rights and order E.L. and Z.L. freed for adoption.

**Section 388 petition**

On January 19, 2021, mother filed a section 388 petition seeking return of the twins to her custody, or in the alternative, reinstatement of reunification services. Mother cited her participation in a substance abuse program since September 17, 2020, regular attendance at a 12-step program with a sponsor, and consistent negative drug tests as changed circumstances warranting the proposed modification of the court's orders. Mother further stated that her requested changes were in the

8

twins' best interests: "The children visit consistently and regularly with their biological mother, who is bonded with them. They would benefit from a continued relationship with their mother, who has successfully maintained a sober lifestyle and who can provide for them full-time. The children would also benefit from maintaining a relationship with their half-siblings Jorge, Oscar, and Angel, who are placed in separate homes."

The juvenile court granted mother a hearing on her section 388 petition and ordered the Department to file a response.

**March 24, 2021 status review report**

E.L. and Z.L. remained placed with the P.s at the time of the Department's March 2021 status review report. The twins continued to participate in physical therapy, occupational therapy, and child development therapy through the regional center. The social worker observed E.L. and Z.L. to be bonded with the P.s, who continued to meet the children's needs.

Mother had resumed in-person visits with E.L. and Z.L. in December 2020. Ms. P. reported that mother was appropriate during the visits. E.L. and Z.L. continued to have virtual visits with the siblings as well.

**Department's response to section 388 petition**

In a March 3, 2021 interview, mother told the social worker that she began using methamphetamine at age 17 and continued to do so periodically for the next 20 years. Mother was currently participating in an outpatient program at El Proyecto del Barrio, where she had reenrolled in September 2020.

From September 2020 to February 2021, mother attended weekly NA/AA meetings. In January 2021, she enrolled in individual counseling and attended weekly sessions. Mother's therapist told the social worker that she was impressed with

mother's focus and dedication to program requirements. Mother's case manager at El Proyecto del Barrio similarly reported that mother had consistently participated in services and had demonstrated growth and commitment to her sobriety. Mother tested negative for drugs from September 2020 through early February 2021.

Mother was pregnant and due to give birth soon. Mother told the social worker that after learning she was pregnant, she had remained drug-free for seven months. Mother did not attribute her sobriety solely to her pregnancy but said she wanted to change her life and had learned to cope with her stress. Mother also credited her support system that consisted of her drug program, Eric, her aunt, her godmother, and a family friend. She was scheduled to complete a parenting program by the end of the month. Mother said she had been accepted into a transitional housing program and that she planned to work after having the new baby.

Eric told the social worker mother had changed after becoming pregnant. He said mother was more tolerant and patient, spent quality time with Angel during her monitored visits, and took her sobriety seriously.

Family friend Juana Gomez said she had known mother for seven years and had fostered mother's three oldest children. She spoke with mother daily and observed a dramatic improvement in mother. She said mother took her sobriety seriously and talked about her future and her goals.

The twins' foster mother, Ms. P., said she had interacted with mother for the last year and a half and was present at nearly all of mother's visits. Ms. P. stated that she observed no improvement in mother's relationship or bond with the twins.

Mother expressed being "stressed out" to be alone with the children. Ms. P. further stated that she and her husband had repeatedly invited mother to participate in the twins' therapy and doctor visits, but mother had not done so. She said mother frequently complained that the twins eat too much and called them "pigs" because she believed they were overweight.

A Department human services assistant who had been monitoring mothers' visits with the twins told the social worker that E.L. and Z.L. demonstrated little interest in mother and did not appear to be attached to her. The twins' occupational therapist, physical therapist, and child development specialist, all confirmed that mother had been invited to participate in the children's therapy sessions but that mother had never done so.

The Department acknowledged mother's progress in her recovery but noted that mother was eight months pregnant and that she had reported being sober for only seven months. The Department expressed concern about mother's failure to participate in E.L.'s and Z.L.'s lives, which included a demanding schedule of therapy and medical appointments. Mother had made no effort to participate in the twins' therapy sessions despite being invited to do so multiple times. The Department noted that E.L. and Z.L. were in a stable and loving home, with foster parents who were willing to adopt them. It recommended denying mother's section 388 petition.

**Hearing on section 388 petition**

At the March 24, 2021 hearing on mother's section 388 petition, the juvenile court received into evidence mother's petition, the Department's response to the petition, and a certificate dated March 22, 2021, indicating that mother had completed six months of a substance abuse program.

11

After hearing argument from counsel, the juvenile court denied mother's petition. The court noted that mother had participated in services and programs in the past and relapsed, and that mother's current sobriety coincided with her most recent pregnancy. The juvenile court expressed concern that mother would again relapse after giving birth and dealing with the stress of a new baby.

The juvenile court also found that mother's requested changes were not in E.L.'s and Z.L.'s best interest. The court noted that mother had not demonstrated sufficient interest in the twins' special needs or participating in their care. After denying mother's section 388 petition, the juvenile court granted the foster parents' request to be deemed the twins' de facto parents.

This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

Section 388 provides in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) "Section 388 provides the 'escape mechanism' . . . built into the process to allow the court to consider new information. [¶] . . . Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances . . . . [¶] [T]he Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in

12

a prior reunification order." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

That being said, "[i]t is not enough for a parent to show *just* a genuine change of circumstances under the statute. The parent must show that the undoing of the prior order would be in the best interests of the child." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*); see § 388, subd. (b).) "[T]he burden of proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change . . . in the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

"'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.'" (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685.) We will not reverse a juvenile court's denial of a section 388 petition "'"unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."'" (*Stephanie M., supra*, 7 Cal.4th at p. 318.)

## II. No abuse of discretion

The juvenile court concluded that mother had not met her burden of demonstrating changed circumstances or that granting her petition for custody or reinstating reunification services was in E.L.'s and Z.L.'s best interest. Factors to be considered in determining what is in the best interests of a child under section 388 include "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children

13

to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F., supra*, 56 Cal.App.4th at p. 532.)

Mother's long-standing substance abuse problem resulted in the removal of the twins from her custody. Mother admitted using methamphetamine since the age of 17 and struggling with her sobriety for the past 20 years. Despite her past participation in drug treatment programs, mother relapsed several times, including while pregnant with E.L. and Z.L. Before her reunification services were terminated, mother left or was discharged from multiple drug treatment programs. She remained drug-free only after learning of her most recent pregnancy. Mother had been sober for only seven months at the time she filed her section 388 petition.

Mother's seven-month period of sobriety was relatively short when compared to her long history of substance abuse. At best, she demonstrated changing rather than changed circumstances in addressing her substance abuse issues. (See *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [parent's recent sobriety reflected changing, not changed, circumstances]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 [mother's four months of sobriety did not demonstrate changed circumstances], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)

Mother contends the juvenile court should have extended or reinstated her reunification services because the pandemic adversely affected her ability to participate in individual counseling and to reunify with the children. The record shows, however, that the Department offered to assist mother with

14

obtaining therapy even after reunification services were terminated. The pandemic was not the cause of mother's failure to complete her substance abuse program. Rather, the record shows that mother was repeatedly discharged from various treatment programs because she failed to take responsibility for her actions. The record also shows that mother demonstrated little interest in the twins' medical and special needs. She never participated in the children's therapy sessions, despite multiple invitations to do so.

Mother cites *In re S.S.* (2020) 55 Cal.App.5th 355 as support for her position. That case, however, is distinguishable. The court in *S.S.* reversed an order terminating the parental rights of a nonoffending father whose poverty and lack of stable housing prevented him from taking custody of his child during the case. Mother was the offending parent in this case. Her substance abuse, her relatively short period of sobriety, and her apparent lack of interest in the twins' medical and special needs were ample support for the juvenile court's denial of her section 388 petition.

Other cases on which mother relies are equally distinguishable. The mother in *In re J.M.* (2020) 50 Cal.App.5th 833, a victim of domestic violence, showed she had addressed the issue by ceasing contact with the offending father and completing all domestic violence training. (*Id.* at p. 846.) She had also progressed to unmonitored visits. (*Id.* at pp. 841, 843.) Mother's visits in this case remained monitored throughout the case, and she had not completed her case plan at the time of the hearing on her section 388 petition.

*In re I.B.* (2020) 53 Cal.App.5th 133 also involved a mother whose children were removed from her because of domestic

15

violence. The mother in *I.B.* completed all aspects of her case plan, separated from her abusive partner, and voluntarily continued with therapy even after the juvenile court terminated reunification services. (*Id.* at pp. 154-155.) There was evidence that the mother's youngest child was equally bonded both to the mother and to the foster parents. (*Id.* at pp. 159-160.) Here there was no evidence the twins were bonded with mother.

Mother also failed to demonstrate that granting her petition would have been in the twins' best interest. Throughout the case, mother demonstrated little interest in the twins' special needs and multiple health issues. E.L. and Z.L. had been placed since their birth with foster parents who consistently met the twins' physical and emotional needs, who were bonded with the children, and who were willing to adopt them. Although mother visited consistently with the children throughout the case, her visits were never unmonitored, and there is no evidence that she assumed a parental role during the visits. The juvenile court weighed the evidence in light of the twins' need for stability and security and found that their best interests would not be served by granting mother's requested changes. The juvenile court did not abuse its discretion by denying mother's section 388 petition.

## DISPOSITION

The March 24, 2021 order denying mother's section 388 petition is affirmed.

_____
CHAVEZ, J.

We concur:

16

_____
LUI, P. J.


_____
ASHMANN-GERST, J.